IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>               Plaintiff,<br><br>      v.<br><br>LACARL DOW,<br><br>             Defendant. | Case No. 19-cr-00138-CRB-1<br><br>**ORDER DENYING MOTION TO SUPPRESS** |

Defendant Lacarl Dow moves to suppress all evidence tracing back to two search warrants issued on November 12, 2015. Dow argues that the warrant applications did not establish probable cause to search his cell phone records or to place a GPS tracker on his car. Dow also requests a Franks hearing based on alleged omissions and misrepresentations in the warrant applications.

The Court heard oral argument on May 12, 2021, after which the parties submitted additional video evidence. The Court concludes that no further briefing or argument is necessary. The Court denies Dow's motion because (i) the warrant applications established probable cause, and (ii) although Dow has made a substantial preliminary showing that the warrant applications were misleading in at least one respect, Dow has failed to show that the warrant applications were misleading in a manner that was material to the magistrate's probable cause determinations.

## I.     BACKGROUND

### A.     Challenged Search Warrants

On November 12, 2015, San Francisco Police department Sergeant Thomas Maguire applied for warrants to (1) obtain and search Dow's cell phone (including Cell

United States District Court
Northern District of California

Site location) records, and (2) place a GPS tracker on Dow's vehicle.  See Warrant Applications (dkt. 46-2, Ex. 1) at 7–9, 18.[1]  Sergeant Maguire's warrant applications contained the following information.

On October 29, 2015, Sekou Carson confessed to committing two armed robberies on October 27, 2015: one at a store called Roxie's Market and one at a 76 Gas Station. See id. at 4, 12.  On November 10, 2015, Sergeant Maguire spoke with Sergeant Matt Mason, who was investigating a "series" of six armed robberies in San Francisco.  Id. at 5, 13.  Sergeant Mason told Sergeant Maguire that one of those six robberies occurred at Roxie's Market on September 25, 2015, and another occurred at the same 76 Gas Station on October 8, 2015.  Id.  Because Carson had been "arrested for armed robberies that occurred at the same locations where two prior unsolved robberies occurred," Sergeants Maguire and Mason believed that Carson might be "involved" in "the larger robbery series."  Id.

The six robberies in that series were linked to one another, and to Carson's two confessed robberies, by a particular "method."  Id.  In each robbery, the suspect walked into an establishment, brought one item to the cash register with cash in his hand, then "pulled out a firearm and robbed the cashier."  See id.

Sergeant Maguire had already obtained a warrant to search Carson's cell phone call records.  Id. at 6, 14.  The records showed that on October 27, 2015 (the day that Carson committed the two robberies to which he later confessed), Carson called a contact named "Blacc Jesus" four times.  Id.  According to another police officer who had previously arrested Dow during a possession of stolen property investigation, "Blacc Jesus" was Dow's nickname.  Id.  Sergeant Maguire reviewed the incident report regarding Dow's arrest in the possession of stolen property investigation and noticed that the phone number listed for Dow was the same number stored as "Blacc Jesus" in Carson's contacts.  Id.  The

---

[1] Then-Sergeant Maguire is now Lieutenant Maguire.  See Opp. (dkt. 51) at 1 n.3.  Because page numbering is inconsistent across the exhibits at docket 46-2, the Court cites to the ECF page number for docket 46-2.

United States District Court
Northern District of California

1    incident report also stated that Dow had been driving a white four-door Chevrolet Impala

2    when Dow was arrested and listed the vehicle's license plate number.  See id.[2]

3        Sergeant Mason told Sergeant Maguire that a white four-door sedan was "used as a

4    getaway vehicle" in one of the robberies in the series.  Id.  That robbery occurred at a

5    grocery store located at 6333 Geary Boulevard in San Francisco on November 4, 2015,

6    when Carson was "already in custody."  Id.  Sergeant Mason provided Sergeant Maguire

7    with "still images" of video surveillance that "captured the getaway vehicle."  Id.  Sergeant

8    Maguire obtained images of Dow's vehicle by searching Dow's license plate number in a

9    photo-database, compared those images to the still images of the "getaway vehicle," and

10   determined that the vehicles "appear to be the same color, make, and model."  Id. at 7, 15.

11       Sergeant Maguire's warrant applications concluded:  "Based on the fact that Carson

12   called Dow 4 times prior to the robberies he committed on 10/27/15, and the fact that the

13   getaway vehicle used in a later robbery matches Dow's vehicle, I believe that Dow is

14   possibly associated with the larger robbery series."  Id.  Sergeant Maguire requested

15   warrants to search Dow's cell phone (including location) records and to place a GPS

16   tracker on Dow's vehicle.  Id. at 9, 17.  A San Francisco Superior Court judge issued the

17   requested warrants.  Id. at 2–3, 10–11.

18       **B.    Facts Relevant to Dow's <u>Franks</u> Request**

19       The first question presented by Dow's motion is whether the warrant applications

20   described above supported the magistrate's probable cause determinations.  But because

21   Dow also argues that the warrant applications contained false and misleading information,

22   additional background is warranted.

23       First, Dow points out that the four calls from Carson to Dow on October 27, 2015

24   occurred "at least three hours" before any robbery and "represented only four of seventy-

25   three outgoing calls" from Carson's phone to "over a dozen different contacts" that day.

26   Mot. (dkt. 46) at 2, 8.  Dow also notes that the four calls lasted 2 minutes and 39 seconds,

27

28   [2] The warrant applications did not state whether the possession of stolen property investigation led to a conviction.

United States District Court
Northern District of California

1 minute and 27 seconds, 22 seconds, and 8 seconds.  Id. at 8.  The government disputes the significance, but not the accuracy, of this additional information.  See Opp. at 10–11.

Second, Dow contends that one of the robberies in the purported "series" did not involve the method described in the warrant applications.  See Reply (dkt. 54) at 1 n.1.[3] According to Dow, one of the listed robberies involved "a pair of suspects entering the store and kidnapping bystanders."  Id.  That robbery occurred on July 18, 2015.  Id.

Third, Dow alleges that the white vehicle that the warrant applications characterized as a "getaway" vehicle for the November 4, 2015 robbery was not a "getaway" vehicle. Dow argues that video footage shows (i) the vehicle approximately two blocks from the grocery store, (ii) the "presumed robbery suspect" running past the vehicle, which is "stopped on the opposite side of the street from the fleeing suspect," and (iii) the vehicle remaining in position for another two minutes before departing.  Mot. at 9.  Dow also says that the robbery suspect "never reappears" after running by the vehicle, and "what appears to be a woman" gets into the vehicle before it leaves.  Id. at 9, 10.  The government disagrees with Dow's interpretation of the video footage.  The government points out that before any of the events that Dow describes, the robbery suspect who later runs by the vehicle "emerges from the vehicle" and walks to the grocery store.  Opp. at 12.  The government also disputes whether any woman later enters the car.  Id. at 13 n.11.

The Court has reviewed the surveillance video footage and still images relating to the November 4, 2015 robbery.  The Court finds that they show the following.

At 8:11 PM, a white four-door sedan pulls over approximately two blocks from the grocery store.  Karmel Decl. Ex. A at USA-003696 (Camera 3) at 09:11:08–09:11:18.[4]  A person exits the passenger door, walks behind the vehicle, and crosses the street.  Id. at 09:11:18–09:11:36.[5]  While the person crosses the street and heads down the opposite

United States District Court
Northern District of California

---

[3] As discussed below, see infra Part III.B.1, Dow did not raise this point until his reply brief.  At oral argument, the government did not dispute Dow's characterization of the July 18, 2015 robbery.

[4] The video timestamps for Camera 1, Camera 2, and Camera 3 are one hour ahead of the actual time.  For example, the timestamp "09:11:08" refers to eight seconds after 8:11 pm.

[5] It is not easy to make out the person exiting the passenger side of the vehicle.  But there is

United States District Court
Northern District of California

1  sidewalk towards the grocery store, the driver of the white vehicle adjusts the vehicle's

2  parking position and turns the car off.  Id. at 09:11:27–09:11:42; Karmel Decl. Ex. A at

3  USA-003692 (Camera 1) at 09:11:33–09:11:42; Karmel Decl. Ex. A at USA-003694

4  (Camera 2) at 09:11:38–09:11:47.  At 8:12:00 PM, the person who exited the white vehicle

5  enters the grocery store.  See Store Entrance Supp. Video (dkt. 57) at 08:12:00–08:12:06.

6  At 8:13 and 8:14 PM, the person who exited the white vehicle approaches the cash register

7  with a single item, then removes money from the register while pointing a gun at the

8  cashier.  See Register Supp. Video (dkt. 57) at 08:13:26–8:14:07.  At 8:14:24 PM, the

9  robber can be seen running away from the grocery store.  See Kane Decl. Ex. 7 at 65.  The

10  robber turns onto the street where the white vehicle is parked and runs past the white

11  vehicle on the opposite sidewalk.  Camera 2 at 09:15:17–09:15:21; Camera 3 at 09:15:20–

12  09:15:23.  The robber is not seen again.

13      Shortly after the robber ran away from the grocery store, a woman with a tote bag

14  walked away from the grocery store in the same direction that the robber ran.  Kane Decl.

15  Ex. 7 at 66.  At 8:16 and 8:17 PM, a person who may be that woman or may be someone

16  else—the Court cannot tell—turns onto the street where the white vehicle is parked and

17  walks slowly down the sidewalk on the white vehicle's side.  See Camera 2 at 09:16:04–

18  09:16:49; Camera 1 at 09:16:46–09:17:08.  The parties dispute whether the video shows

19  that person getting into the white vehicle or walking slowly past it—again, the Court

20  cannot tell.  See Camera 3 at 09:17:00–09:17:18.  The white vehicle then drives away.  See

21  Camera 3 at 09:17:17–09:17:23.

22      In sum, the Court finds that the robber arrived as a passenger in the white vehicle,

23  but that the video does not show the robber return to the white vehicle after committing the

24  robbery.

25

26

27

28  movement from inside the vehicle on the passenger side just before the person would have exited
the vehicle.  It also appears that the person who walks behind the vehicle and robs the grocery
store could not have come from anywhere but the vehicle.

United States District Court
Northern District of California

### C.      Related Proceedings

Dow was arrested on November 19, 2015, while attempting to rob a Chevron gas station in San Leandro, California.  See Opp. at 5.  He has been in custody since then and is appearing in federal court pursuant to a writ.  See Mot. at 3, 4 n.2.

Dow has been convicted of robbery and wrongful possession of a firearm in San Mateo County Superior Court, which denied Dow's motion to suppress the same warrants at issue here.  See id. at 4.  Dow asserts that the San Mateo County Superior Court denied his motion without a Franks hearing and denied his request to play the video evidence. Dow was sentenced to 15 years' imprisonment after entering a conditional guilty plea but is appealing the denial of his motion to suppress.  Id.

Dow is also facing other robbery charges in Alameda County, and "[a]t least some of the evidence supporting those charges arises from the same search warrant[s] at issue here."  Id. at 3.  After "multiple proceedings" regarding those warrants, including a Franks hearing, an Alameda County judge has denied Dow's motion to suppress.  Id. at 3–4.  Dow asserts that during the hearing, "[o]nly snippets of the video evidence were played."  Id.

### D.      The Instant Motion

Dow has been charged with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), interference with commerce by robbery in violation of 18 U.S.C. § 1951(a), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and criminal forfeiture under 18 U.S.C. §§ 924(d), 981(a).  According to Dow, the underlying evidence all traces back to the November 12, 2015 warrants, as "each subsequent warrant relied on the same deficient statements from the first affidavit[s]." Mot. at 2.[6]

---

[6] If the Court were to grant Dow's motion, the government has requested the opportunity "to provide additional briefing on the scope of evidence to be suppressed."  Opp. at 16 n.12. According to the government, "a significant portion of the inculpatory evidence in this case would still be admissible."  Id.  Because the Court denies Dow's motion, that additional briefing is unnecessary.

## II.    LEGAL STANDARD

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV.  Unless an exception applies, the exclusionary rule prevents unlawfully obtained evidence from being introduced at trial against the person whose Fourth Amendment rights were violated. See Mapp v. Ohio, 367 U.S. 643, 655 (1961).  This includes other evidence "come at by exploitation of that illegality." Wong Sun v. United States, 371 U.S. 471, 488 (1963) (quotation omitted).

Police may search a constitutionally protected area when they have a warrant supported by probable cause.  Katz v. United States, 389 U.S. 347, 357–58 (1967). Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996).  This "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983)).  Whether a magistrate "had a substantial basis for concluding that probable cause existed" is reviewed for "clear error" and with "great deference." United States v. Schesso, 730 F.3d 1040, 1045 (9th Cir. 2013).

Different rules apply when a magistrate's probable cause determination may have rested on false or misleading information.  When a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154, 155–56 (1978).  Thus, to be entitled to a Franks hearing, a defendant must make a substantial preliminary showing of (1) a knowing or reckless misrepresentation or omission in the warrant application, that (2) is material to the probable cause question.  See United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th

1   Cir. 2002).  Then, if "the allegation of perjury or reckless disregard is established by the

2   defendant by a preponderance of the evidence" at the <u>Franks</u> hearing, "and, with the

3   affidavit's false material set to one side, the affidavit's remaining content is insufficient to

4   establish probable cause, the search warrant must be voided and the fruits of the search

5   excluded to the same extent as if probable cause was lacking on the face of the affidavit."

6   <u>Franks</u>, 438 U.S. at 156.

7   **III.    DISCUSSION**

8          Dow argues that Sergeant Maguire's November 12, 2015 warrant applications did

9   not support the magistrate's probable cause determinations.  <u>See</u> Mot. at 4–7.  The Court

10  rejects that argument.  If true and not misleading, the warrant applications established a

11  fair probability that evidence relating to one or more robberies would be found in Dow's

12  cell phone data and by tracking his car.  Dow then argues that he is entitled to a <u>Franks</u>

13  hearing because (i) the warrant applications intentionally or recklessly omitted certain

14  information and contained other misleading information, and (ii) the omitted and

15  misleading information was material to the magistrate's probable cause determinations.

16  <u>See</u> Mot. at 8–16.  The Court concludes that although the warrant applications were

17  misleading in at least one respect, any misleading misrepresentations or omissions were

18  not material to the magistrate's probable cause findings.  The Court thus denies Dow's

19  motion.

20         **A.      Probable Cause Based on the Warrant Applications**

21         The Court begins by concluding that the warrant applications established probable

22  cause to search Dow's cell phone records and to place a GPS tracker on Dow's car.  At this

23  step, the Court examines only the information provided in the warrant applications.

24         As discussed above, the warrant applications contained the following information:

25

26

27

28

United States District Court
Northern District of California

1.     Carson confessed to committing two robberies on October 27, 2015.

2.     The two stores that Carson robbed had each been robbed less than a month earlier, causing the police to believe that Carson might have been involved with those two earlier robberies.

3.     These robberies were linked to each other, and to four additional robberies, by a common method. The robber approached the register with one item and cash, then pointed a gun at the cashier.

4.     The day that Carson committed the two latter robberies (to which he confessed), he called Dow four times.

5.     Dow drove a white Chevrolet Impala.

6.     One robbery involving the same method occurred after Carson was arrested, on November 4, 2015.

7.     A car that appeared to match Dow's vehicle's color, make, and model (i.e., a car that appeared to be a white Chevrolet Impala) was the getaway car in that robbery, based on a comparison between a database photograph of Dow's car and a still image pulled from surveillance footage near the store.

See supra Part I.A.

This information supported the magistrate's probable cause determinations. It shows links between (i) the robberies in the series, (ii) Carson and the robberies before November 4, 2015, (iii) Dow and Carson on the day of two robberies in the series, and (iv) a vehicle matching Dow's vehicle and the November 4, 2015 robbery. Put another way, the information linked Dow to the November 4, 2015 robbery for two basic reasons. First, a vehicle matching Dow's played a role in the robbery. Second, just eight days earlier, Carson spoke to Dow on the phone and committed two robberies using the same method that was used in the November 4, 2015 robbery.[7] Bearing in mind that probable cause requires only a "probability or substantial chance of criminal activity," not certainty or "an actual showing of such activity," Wesby, 138 S. Ct. at 586, these objective links were enough to justify a reasonable person's belief that Dow may have played a role in one or

_____

[7] The second link distinguishes this case from United States v. Flores, an unpublished Ninth Circuit opinion that the parties discussed at oral argument. See 808 F. App'x 445, 446–47 (9th Cir. 2020). Flores held that driving a vehicle fitting the "general description" of a vehicle involved in criminal activity is not enough for reasonable suspicion, at least when the vehicle was "heading in the opposite direction of the car identified by the [witness]" when police stopped it. Id. Here, probable cause was based not only on a vehicle match, but also on communications between Dow and Carson and the similarities between the relevant robberies.

1    more of the robberies, see Ornelas, 516 U.S. at 696.

2           Dow's arguments to the contrary are unpersuasive.

3           Dow argues that nothing about the "method" of robbery described in the warrant

4    applications was "particularly distinguishing," and Sergeant Maguire offered "no

5    explanation as to why he considered it unique." Mot. at 6. Thus, while "overlapping

6    locations" may have linked four of the relevant robberies, there was less reason to link

7    those robberies to other robberies in the purported "series," including the November 4,

8    2015 robbery involving the white vehicle. This argument wrongly elevates probable cause

9    to something approaching certainty. See Wesby, 138 S. Ct. at 586. Dow might be right

10   that approaching a cash register with one item and a gun is not a novel method of robbery.

11   But Sergeant Maguire's warrant applications never stated that the method was particularly

12   unique, and the magistrate did not commit "clear error" by concluding that similarities

13   among the robberies plausibly (if not certainly) linked them. Schesso, 730 F.3d at 1045.

14          Dow's argument that there was no probable cause because Carson could not have

15   committed the November 4, 2015 robbery, see Mot. at 6, also fails. The magistrate could

16   have reasonably inferred that more than one person was involved in some or all of the

17   robberies. After all, it is common knowledge that people who rob grocery stores and gas

18   stations often act with accomplices (e.g., lookouts and drivers). Those accomplices may

19   continue to commit robberies after one person is apprehended. The day-of-robbery phone

20   calls from Carson to Dow, along with a vehicle matching Dow's playing a role in the

21   subsequent robbery, supported a common sense inference that Dow could have played a

22   role in one or more of the robberies—and Carson's arrest does not negate that inference.

23          Next, Dow argues that "[t]here was no reasonable basis to believe that evidence

24   regarding the November 4, 2015 robbery would be found in Dow's cellphone records and

25   CSLA (Cell Site Location Information)." Mot. at 6. But this argument rises and falls with

26   Dow's other arguments. If the warrant applications established a fair probability that Dow

27   had played a role in one or more of the robberies, then there was a fair probability that

28   Dow's cell phone records might contain evidence pertinent to those robberies, such as

10

United States District Court
Northern District of California

where Dow's cell phone was located when the robberies occurred.

Dow also attempts to rely on United States v. Elmore, 917 F.3d 1068 (9th Cir. 2019); Mot. at 5, which is not instructive here. In Elmore, a minor left her parents' home in San Francisco and began staying with her brother in Los Angeles. 917 F.3d at 1072. There, a man named Calvin Sneed started dating and "pimping" the minor. Id. After the minor's family learned that she had become a prostitute, Sneed drove the minor back to her parents' home in San Francisco. Id. Several days later, the minor asked Sneed to pick her up. When Sneed arrived, he was shot and killed. Id. Police obtained evidence implicating the minor's father and a second, unidentified person in the murder. Id. A search warrant application stated that (1) the minor had stayed with her brother in Los Angeles, and (2) the minor had her brother's phone number in her phone. Id. at 1075. The Ninth Circuit concluded that these pieces of information did not establish a fair probability that evidence of the murder would be found in her brother's cell phone records and location data. Id. The information merely indicated that the minor "had the phone number of a family member with whom she had lived in Los Angeles." Id. It did not suggest that her brother was "in or around San Francisco" when the murder occurred or otherwise implicate her brother in the murder. Id. at 1075. This case would be more like Elmore if Carson was merely friends with Dow and had Dow's phone number. But here, the warrant application contained significantly more information plausibly linking Dow to at least one robbery.

Finally, Dow argues that even if the white vehicle was the getaway car for the November 4, 2015 robbery, the connection between that vehicle and Dow is too tenuous to support a finding of probable cause. See Mot. at 7. More specifically, Dow argues that there is little reason to believe the white sedan was his car, "let alone that Dow was the driver of that car." Id. In that respect, Dow says that "any other white, four-door sedan" could have been the car in the video footage. Id. The Court addresses Dow's argument that the warrant applications were misleading below. See infra Part III.B.[8]   Here, the Court

---

[8] The Court rejects Dow's argument that the white sedan lacked additional distinguishing features. See infra Note 10.

assesses the language in the warrant applications, which stated that the vehicle in the video footage appeared to be the same "color, make, and model" as Dow's. Warrant Applications at 7, 15. This language went well beyond stating that the getaway car was merely a white four-door sedan. It implied that the vehicle was a white Chevrolet Impala, just like Dow's. When considered alongside the other evidence, this information gave rise to a fair probability that Dow's car had been used in the November 4, 2015 robbery, and thus a fair probability that Dow had played some role in at least one robbery.

Probable cause is not a high bar, and the information in the warrant applications was far less speculative than Dow suggests. Therefore, the magistrate did not err in determining that the warrants established probable cause to search Dow's cell phone records and track his vehicle.

### B.  Franks

Of course, that is not the end of the story. Dow also argues that the warrant applications were misleading. To determine whether Dow is entitled to a Franks hearing, the Court must first determine whether Dow has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." 438 U.S. at 156. If so, the Court must determine whether "the allegedly false statement" was "necessary to the finding of probable cause." Id. at 156. Dow challenges the warrant applications' statements regarding Carson's calls to Dow, the method of the robberies, and the so-called "getaway" car. The court concludes that no allegedly misleading statements or omissions were material to the magistrate's probable cause determinations.

### 1.  Knowing and Intentional False Statement

The Court first considers Carson's calls to Dow. The warrant applications stated that Carson called Dow four times the day of the robbery; this statement was accurate, not false. Dow nonetheless argues that the statement was misleading because it omitted relevant information: Carson made 68 other calls to at least a dozen contacts the same day, Carson's calls to Dow were several hours before any robbery, and the duration of Carson's

United States District Court
Northern District of California

calls to Dow ranged from just eight seconds to two minutes and thirty-nine seconds.  See

Mot. at 8–9.  The Court doubts whether this additional information renders the objectively

true statements in the warrant applications misleading.  But the Court assumes for the sake

of argument that Dow has made substantial preliminary showings that these omissions

were misleading and that Sergeant Maguire intentionally or recklessly omitted the

information from the warrant applications.

The Court takes the same approach to Dow's argument regarding the robbery

method.  The warrant applications stated that all robberies in the "series" were linked by a

common method.  See Warrant Applications at 5, 13.  Dow challenged the method's

uniqueness, not its existence, in his motion.  See Mot. at 6.  But in his reply brief and at

oral argument, Dow challenged whether the method was actually used in every robbery in

the series.  See Reply at 1 & n.1.  Dow points to the July 18, 2015 grocery store robbery,

which involved markedly different facts (i.e., two suspects entering a store and kidnapping

bystanders).  Id.  Here again, the Court assumes for the sake of argument that Dow did not

forfeit this argument by failing to raise it in his motion, and that Sergeant Maguire

recklessly or intentionally omitted this information.[9]

The Court concludes that the warrant applications were intentionally or recklessly

misleading in one more obvious way.  It was misleading to characterize the vehicle

matching Dow's as a "getaway car" for the November 4, 2015 robbery.[10]  When the

---

[9] Dow has provided no specific evidence or argument suggesting that Sergeant Maguire recklessly or intentionally omitted information about the July 18, 2015 robbery.  Sergeant Maguire learned about the robbery series from Sergeant Mason, see Warrant Applications at 5, 13, so it is not obvious that Sergeant Maguire knew details about all the other robberies.

[10] Although not cast as a Franks argument, Dow also argues that Sergeant Maguire's statement that the white vehicle and Dow's vehicle appeared to be the same "color, make, and model" was misleading.  Mot. at 7.  Dow argues that the video footage merely showed a vehicle that looked like "any other white, four door sedan."  Id.  The Court rejects this argument because the vehicle in the video footage is similar to Dow's vehicle (as seen in the database photograph) in various more specific ways.  See Database Photo (dkt. 52-4); Camera 1 at 09:11:05–09:11:42; Camera 2 at 09:10:56–09:11:06; Camera 3 at 9:11:08–9:17:22.  In addition to being the same color, the vehicles appear to have the same body shape, the same windows, the same rear lights, the same logo placement on the trunk, and the same horizontal groove running along the bottom between the wheels.  See id.  Thus, Sergeant Maguire had ample reason to state that the vehicles "appear[ed] to be the same color, make, and model."  Warrant Applications at 7, 15.

United States District Court
Northern District of California

warrant applications stated that the vehicle was a getaway car, they implied that the robber left the scene in the vehicle. In fact, the robber arrived at the scene in the vehicle and did not return to the vehicle. Dow emphasizes that Sergeant Maguire "watched the videos," Reply at 5, and asserts that "[t]o have reviewed all of the surveillance videos and still aver in an unqualified and definitive manner that the white car 'was used as the getaway vehicle' demonstrates more than an inadvertent mistake," Mot. at 15–16. Dow is right. Sergeant Maguire does not deny that he watched the videos, see Maguire Decl. (dkt. 52-3) ¶ 8, and the video does not show Dow return to the vehicle. Thus, Dow has made a substantial preliminary showing that Sergeant Maguire knew that his characterization of the "getaway" car was misleading.[11]

### 2.   Materiality

To be entitled to a Franks hearing, however, Dow must show that these assumed and actual misrepresentations materially affected the magistrate's probable cause determinations. In this regard, Dow's motion comes up short.

A hypothetical warrant application, revised to account for the misrepresentations that Dow challenges, would have contained the following information:

1. Carson confessed to committing two robberies on October 27, 2015.

2. The two stores that Carson robbed had each been robbed less than a month earlier, causing the police to believe that Carson might have

---

[11] The warrant applications stated that Sergeant Maguire matched the vehicles not by comparing the surveillance footage to the database photo, but by comparing a still image from the surveillance footage to the database photo. See Warrant Applications at 7, 15. This subtle difference could have mattered if (i) Sergeant Maguire had not watched the video footage, such that the still image was the only basis for comparison, and (ii) the still image was too blurry for a fair comparison. If both those things were true, then the warrant applications would have stated that Sergeant Maguire matched the vehicles to one another, even though such a match was not possible. But Dow does not challenge whether Sergeant Maguire could have plausibly matched the still image to the database photograph and has thus forfeited any argument along these lines. See Mot. at 7, 9 n.3, 15–16. Such an argument would conflict with Dow's other arguments. For other purposes, Dow repeatedly emphasizes that Sergeant Maguire watched the video footage. Id. at 15–16; Reply at 5 & n.5. Therefore, the warrant applications' statements about the vehicle comparison were misleading only because they omitted that the still image came from video footage confirming the vehicles' similarity. See supra note 10. That omission was not material, because the additional information would have only strengthened the evidence supporting the magistrate's probable cause determinations.

been involved with those two earlier robberies.

3. These robberies were linked to each other, and to three additional robberies, by a common method. The robber approached the register with one item and cash, then pointed a gun at the cashier. (The robberies were not linked to a July 2015 grocery store robbery involving a different method).

4. The day that Carson committed the two latter robberies (to which he confessed), he called Dow four times. The calls lasted between 8 seconds and 2 minutes and 39 seconds. Each call occurred several hours before any robbery. Carson placed a total of 73 total calls that day to at least twelve different people.

5. Dow drove a white Chevrolet Impala.

6. One robbery involving the same method as the others occurred after Carson was arrested—on November 4, 2015.

7. In that robbery, the robber arrived two blocks from the grocery store in a car that appeared to match Dow's vehicle's color, make, and model (i.e., a car that appeared to be a white Chevrolet Impala).

8. After committing that robbery, the robber ran past the vehicle appearing to match Dow's on the other side of the street. The vehicle then drove off without the robbery suspect. It is not known whether the suspect later rendezvoused with the vehicle.

The Court concludes that this modified information would still have established probable cause. It does not matter that Carson made numerous calls to other people on October 27, 2015, that his calls to Dow were relatively brief, or that they occurred several hours before the robberies that day. It bears repeating that probable cause does not require certainty, and here Carson's calls linked him to Dow on the day of those robberies, even if Carson's calls also linked Carson to other people that day. It also does not matter that one of the robberies in the series did not involve the relevant method. The warrant applications relied on no specific evidence from the July 18, 2015 robbery. Its exclusion from the robbery series makes the series one robbery smaller, but does not defeat the links between the other relevant robberies. Finally, it does not matter that the vehicle matching Dow's was not a "getaway" vehicle. The robber arrived in the vehicle. So there remains a fair

probability—if not a certainty—that the vehicle's owner played a role in the robbery.[12]

The Court declines to take a piecemeal approach to the relevant evidence. Even if the method linking the robberies, the full phone call context, and the drop-off car could not separately establish probable cause—an issue the Court need not decide—when taken together, they do. The hypothetical, more comprehensive warrant application would still have established concrete links between Carson, the robberies, and Dow. And these links would have established probable cause.[13]

## IV.   CONCLUSION

For the foregoing reasons, the Court denies Dow's motion to suppress and Dow's request for a <u>Franks</u> hearing.

**IT IS SO ORDERED.**

Dated: June 1, 2021



_____
CHARLES R. BREYER
United States District Judge

---

[12] At oral argument, Dow's counsel argued that the warrant applications were also materially misleading because they mentioned Dow's arrest in the possession of stolen property investigation without disclosing that Dow was never convicted for possession of stolen property. Had this argument been timely raised, the Court would have rejected it. The warrant applications did not state or imply that Dow had been convicted.

[13] Because the Court concludes that the warrant applications supported the magistrate's probable cause determinations, and that any misleading misstatements or omissions were not material to those determinations, the Court need not determine whether the good faith exception to the exclusionary rule applies. <u>See</u> Mot. at 16–17; <u>United States v. Leon</u>, 468 U.S. 897, 932 (1984).